TUCKER, Judge.
The declaration charges, that Philip Fitzhugh drew a bill of exchange in favour of Samuel Love, or order, on certain persons in Great Britain. That afterwards, on the same day, Presley Thornton, at the special instance and request of the said Philip, and in order to give a credit to the said bill of exchange, and to induce Love to receive it from Fitzhugh, and in consideration of Love’s paying to Fitzhugh the value in current money, and actually *received by Fitzhugh, did, by his endorsement, made on the said bill, according to the custom of merchants, endorse the same for payment to the said Samuel Love: which was partly paid, and protested for the balance. Whereupon this suit is brought upon the act of assembly. Plea, nil debet, and issue. The bill of exceptions states a copy of the bill and protest made by a notary public in Liverpool, made, as he alleges, from the original bill and the protest thereof, made in London : By which it appears, that there was no special undertaking on the part of Thornton, to warrant the payment; but a mere endorsement of his name, prior to that of Samuel Love, in whose favour the bill was drawn. The jury found a verdict for the plaintiff, if the court should be of opinion that the bill of exchange and the copy of the protest, (the original appearing to have been lost,) are sufficient to support the plaintiff’s action.
The question referred to the court by the jury, so nearly resembles that which must have occurred to the court itself upon the declaration, that it may be regarded as, in substance the same. Which, is this, Whether Presley Thornton is an endorser of the bill in the sense and meaning of the custom and usage of merchants, or not?
A bill of exchange may be defined an open letter of request, addressed by one person to a second, desiring him to pay a sum of money to a third, or to his order ; or it may be made payable to bearer. The person who makes the bill, is called the drawer : He to whom it is addressed, the drawee ; and if he undertakes to pay it, he is then called the acceptor : The person to whom it is ordered to be paid, is called the payee; and, if he appoints another to receive the money, that other is called the endorsee, as the payee is, in respect to him, the endorser. Kyd’s Bills Ex. 3, 4.
Endorsement is a term known in law, which by the custom of merchants, transfers the property of the bill to the endorsee. Cunningh. Bills, 57 ; 3 Bac. Ab. 609; 4 Bac. Ab. 703.
*Bills payable to bearer are transferred by delivery. But to transfer those payable to order, as this bill is, it is necessary, in addition to delivery, that there should be something by which the payee may appear to express his order. This additional circumstance is an endorsement. Kyd, 88.
Every transfer implies a property in the person transferring, or an authority to make it, given by him in whom the property is vested. In this case, it is not pretended that Thornton ever had any property in the bill ; nor was he the agent of any person having a property in the bill. He, therefore, was not an endorser according to the custom of merchants.
*1066 At the time he wrote his name on the bill, it was incapable of being' transferred, but by the previous endorsement of Love the payee. Thornton was neither drawee nor payee, nor assignee nor endorsee, at that time. His endorsement, therefore, was a mere nullity, according to the custom of merchants. Upon every other ground, it was a nudum pactum. He received no consideration for warranting the payment of the bill, nor is any legal consideration charged. He was, therefore, not liable for the bill.
The action is joint. The plea is joint. The judgment is joint. It cannot be severed in this action. Thornton, then, not being liable, the judgment is erroneous, and must, I conceive, be wholly reversed. No opinion is, therefore, necessary as to the validity of the evidence. I shall only say, an attested copy by a notary public in New York or Norfolk, would have been just as good evidence, as this copy by a notary in Liverpool, whose attestation, as it respects a bill of exchange on London, and protested there, is perfectly extra ofScial; and, consequently, no evidence. If the original were lost, why was not an attested copy produced from the office of the notary in London, who made the protest?